[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON MOTIONS #112 and #113
This is a civil action brought by a minor plaintiff who alleges she was exposed to toxic levels of lead when she resided at 210 Winthrop Avenue, New Haven, Connecticut, a property owned by the defendants Kanute and Rosa Lee Beverly. Through counsel, the defendants served notice of a records deposition on the New Haven Health Department ["health department"] seeking records in its possession regarding seven specified properties including their own, two specified individuals and any other property where the minor plaintiff had resided or stayed. The City of New Haven, on behalf of the health department, moved to quash the subpoena and for a protective order claiming the records sought are subject to the provisions of General Statutes § 19a-25 and General Statutes §19a-215. The defendants have filed an objection to the health department's motions.
Section 19a-25 provides, in pertinent part, that: "All information, CT Page 8325 records of interviews, written reports, statements, notes, memoranda or other data, including personal data as defined in subdivision (9) of section 4-190 . . . procured by the directors of health of towns, cities or boroughs . . . pursuant to section 19a-215, or procured by such other persons, agencies or organizations, for the purpose of reducing the morbidity or mortality from any cause or condition, shall be confidential and shall be used solely for the purposes of medical or scientific research and, for information obtained pursuant to section 19a-215, disease prevention and control by the local director of health and the Department of Public Health." Section 19a-215 provides, in pertinent part, that: "All personal information obtained from disease prevention and control investigations as performed in subsection (c) of this section including the health care provider's name and the identity of the reported case of disease and suspected source persons and contacts shall not be divulged to anyone and shall be held strictly confidential pursuant to section 19a-25, by the local director of health and his authorized agent and by the Department of Public Health." Thus, any confidentiality of § 19a-215 information is provided by the protections afforded under § 19a-25.
This scope of the protection from disclosure provided by § 19a-25
was recently addressed in Babcock v. Bridgeport Hospital, 251 Conn. 790,742 A.2d 322 (1999). "The scope of confidentiality and inadmissibility mandated by this statute does not extend to all records, as the concluding sentence makes clear: "This section shall not be deemed to affect disclosure of regular hospital and medical records made in the course of the regular notation of the care and treatment of any patient, but only records or notations by such staff committees pursuant to their work." Id, 251 Conn. 837.
In Babcock, the Supreme Court looked to the statute's language and its legislative history to narrowly interpreted the privilege afforded by § 19a-25. First, in looking at the language of the statute, the court concluded that it "contemplates the protection of material related to a specific topic when it is collected for a distinct purpose." Id.,251 Conn. 838. In that regard, the court noted the statute's specific exemption of "regular hospital and medical records." Second, the court stated that the "legislative history of § 19a-25 underscores that the medical studies privilege protects research conducted for the purpose of reducing instances of morbidity and mortality, but not information collected in the course of routine patient care or for other purposesunrelated to reductions in morbidity and mortality. (Emphasis supplied)."Id. "In light of the statute's language and legislative history, we conclude that the privilege afforded by § 19a-25 is limited to the designated materials . . . that are generated primarily for the purpose of the study of morbidity and mortality, undertaken specifically for the CT Page 8326 purpose of reducing" morbidity and mortality. Id., 251 Conn. 841.
Because "the privilege afforded by § 19a-25 is not unlimited in scope, but, rather, applies only to documents of a particular nature procured for a specified purpose," id., 251 Conn. 842, the burden is placed on the party opposing production to satisfy the court that the documents it seeks to withhold meet the standard stated above when, as here, that nature of the documents is not "patently discernible from the face of the discovery request." Id., 251 Conn. 848. "That burden is discharged by the presentation of evidence in the form of testimony or affidavit concerning the document's content and use." Id. General assertions regarding the nature of an investigation or the role of an investigating agency are insufficient to establish that a document was generated primarily for the purpose of study undertaken for the particular purpose of reducing morbidity and mortality, or for disease prevention and control. Id., 251 Conn. 844-45.
On May 15, 2001, the health department filed an affidavit of Paul Kowalski, its director of enviromnental health dated May 10, 2001, in which Kowalski asserted the following: (a) "The information, material and testimony called for by the Defendants . . . related to a lead paint/lead toxicity investigation which was conducted by the New Haven Health Department." (b) "Said investigation was conducted in connection which [sic] the Health Department's studies of morbidity and mortality for the purpose of reducing morbidity and mortality due to lead toxicity." (c) "Said investigation was conducted pursuant to C.G.S. § 19a-215." (d) "Said investigation was conducted in connection with a disease prevention and control investigation." (e)"Lead toxicity is deemed to be a reportable disease pursuant to the 2001 List of Reportable Diseases. . . ." When the court conducted oral argument on May 21, 2001, it expressed its concerns that this affidavit was inadequate for it to determine whether the health department met its Babcock burden and indicated its willingness to give the health department additional time to satisfy the burden, which was accepted. Although the health department filed an additional submission on May 29, 2001, it consisted of a memorandum of law which had attached to it the same May 10th affidavit. No additional evidence has been presented to the court.
The court concludes that the health department has failed to meet its burden under Babcock. First, the health department has failed to identify the particular documents it seeks to withhold.[1] For example, it is very likely that the health department's files contain "regular hospital and medical records made in the course of the regular notation of the care and treatment of" the minor plaintiff which the health department must turn over.[2]
CT Page 8327
Second, the health department has failed to identify the nature of the particular documents and their contents, and that they were generated primarily for the purpose of a specific study of morbidity or mortality which was undertaken for the particular purpose of reducing instances of morbidity or mortality from exposure to toxic levels of lead or that they were generated primarily for disease prevention and control. Although arguably some of the documents may be "health data" as defined by §19a-25-1(6)[3] of the Regulations of Connecticut State Agencies ("Regulations") and may meet Babcock's standard for privileged documents, the court imagines that many documents in the health department's file regarding the minor plaintiff or the subject properties do not meet the Babcock definition. Under statute and regulation, the health department is not only required to undertake an epidemiological investigation to determine the source of lead, when it receives a confirmed report of a blood lead level equal to or greater than 20 micrograms per deciliter of lead in a person, but it is also required to order and monitor appropriate abatement if toxic levels of lead are found on the interior or exterior surfaces of a particular dwelling unit or in the soil. General Statutes § 19a-111; Regulations, §§ 19a-111-3,19a-111-4. In that regard, the regulations require various documents to be generated, not necessarily by the health department or its staff and not primarily for the purpose of a morbidity or mortality study or disease control and prevention. For example, the regulations provide for abatement plans and lead management plans, id., and those documents do not involve health data. Documents are not immune from discovery simply because they are procured by a health department that, among its many mandates, conducts research into morbidity, mortality and disease prevention and control.
The court concludes that the health department has failed to discharge its burden of providing the court with evidence to support its motion to quash and motion for protective order. Accordingly, on the present state of the record, the motion to quash and for protective order (#112) is denied and the objection to those motions (#113) is sustained.
LINDA K. LAGER, JUDGE